Filed: 12/23/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ALIJONDRO JONES,<br><br>     Defendant and Appellant. | A162634<br><br>(Solano County<br> Super. Ct. No.<br>FCR310886) |

Alijondro Jones appeals from an order denying his motion for resentencing under Penal Code section 1170.95 after he was convicted of first degree murder under a felony-murder theory. The court found him ineligible for relief because he was a major participant who acted with reckless indifference to human life. On appeal, Jones contends (1) the trial court was precluded from relying on evidence that he was the actual shooter because the jury found not true the allegations that he personally used a firearm; (2) insufficient evidence supports the trial court's determination that he was a major participant who acted with reckless indifference to human life; (3) the trial court erred in not considering his youth as a factor in making that determination; and (4) defense counsel provided ineffective assistance by not raising the "collateral estoppel" argument and by not raising the issue of Jones's youth after the court's ruling. In a supplemental opening brief, Jones contends the order must be reversed due to a recent decision in this appellate district, *People v. Cooper* (2022) 77 Cal.App.5th 393 (*Cooper*).

1

Because of the unusual circumstances of this case, including the fact that the trial court's ruling occurred before our decision in *In re Moore* (2021) 68 Cal.App.5th 434 (*Moore*), we cannot presume from the record that the trial court considered evidence of Jones's youth, which *Moore* held to be "*a relevant factor*" in deciding whether a defendant was a major participant who acted with reckless indifference to human life. (*Id*. at p. 454, italics added.) For this reason, and without suggesting that Jones's age and maturity level will necessarily affect the outcome of the trial court's determination, we will remand for the court's consideration of all relevant factors consistent with prevailing law.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  The Shooting Underlying Jones's Murder Conviction

As we summarized in our prior opinion affirming Jones's conviction, the essential facts pertaining to his crime were as follows. (See *People v. Jones* (Dec. 26, 2019, A154492) [nonpub. opn.] [2019 Cal.App. Unpub. Lexis 8611] (*Jones*).)[1]

At approximately 1:30 a.m. on October 6, 2014, Vacaville police responded to a 911 call about a shooting at the Canyon Creek Apartments. They found 18-year-old Demetrius Ward in the front seat of his truck, unconscious and with a gunshot wound in his neck. A Ziplock bag with marijuana was found inside the truck, and a 45-caliber shell casing was found on the ground a few feet away. Ward was taken to the hospital, where he died. The murder weapon was never found.

---

[1]  Jones filed a motion seeking our judicial notice of the record in Jones's prior appeal (A154492). We deferred ruling on the motion pending our consideration of the merits. We now grant the motion.

The 911 call was placed by Kai Hughes, who was also 18 years old. After providing conflicting stories about what happened, she eventually told police that Ward was shot by Jones during a botched marijuana robbery.

In the months before the shooting, Hughes had associated with Jones as well as with Dezmon Frazier (for whom she sold drugs), Toriano Byrd (referred to by respondent and the trial court as "Boyd"), Rhianna Cea, and Rick Paraiso. They frequented the home of Aimee Sabedra in the Canyon Creek Apartments and used drugs together. Hughes was also good friends with victim Ward, her former boyfriend.

Before midnight on October 5, 2014, Hughes was at her aunt's home. She received a message from Ward via Twitter asking "[w]ho needs weed." Through text messages, Ward told her he had high-quality marijuana to sell and Hughes told him she wanted to buy it, indicating (falsely) that she had the money. Ward arranged to pick her up. Hughes called Frazier and Byrd, saying she wanted them to steal Ward's marijuana.

Ward picked up Hughes, and she directed him to the Canyon Creek Apartments, falsely claiming she had left her purse with money there. He pulled into the apartment complex and waited while Hughes went into Sabedra's apartment.

In the apartment, Sabedra was asleep. In a bedroom, Jones, Frazier and Byrd were smoking marijuana and using other drugs. After Paraiso joined the group, they discussed a plan to rob Ward. Hughes texted Ward and asked whether he would take $150; he indicated that $180 was the price. Byrd, who was carrying a gun in a shoulder holster, said he did not want to be involved. Jones and Paraiso volunteered to commit the robbery; Jones grabbed Byrd's gun, and when Byrd tried to remove the clip, Jones insisted on taking it, saying he would need it.

3

Jones and Paraiso walked toward Ward's truck. Hughes followed and ducked behind a bush. From there, she heard "muffled" arguing and then heard a gunshot and saw a bright light. Paraiso came running and took her back to Sabedra's apartment. Jones walked in a few seconds later. According to Hughes, Jones said that Ward "told me I needed to shoot him for his weed. I don't know who he thought he was so I shot him."

After Jones said he had not gotten the marijuana or the bullet casing, Hughes texted Ward, "Here I come," and told the others she was going to pick up the casing. When she found Ward injured in the truck, she called 911 and said her "brother" had been shot.

After the shooting, Sabedra was shaken awake. Someone threw a heavy bundle on her lap and told her to hide it; she took the bundle to her upstairs neighbor's apartment and placed it under a couch. Sabedra returned to her apartment, where Jones was joking. Sabedra walked with Jones to a convenience store; along the way, Jones told Sabedra he had "blasted that fool because he wouldn't give it up" and laughed.

Frazier later told Sabedra to retrieve the object she had hidden. She got the bundle and saw it was Byrd's gun. When police interviewed Sabedra, she told them Jones was the shooter.

Police arrested Hughes for Ward's murder and arrested Sabedra for being an accessory after the fact. (Pen. Code, §§ 187, 32.) Both agreed to testify against Jones and entered into immunity agreements. Hughes pled guilty to one count of attempted robbery and admitted a weapon use enhancement, and the murder count against her was dismissed. Sabedra pled guilty to one count of accessory after the fact with no jail time and the dismissal of an unrelated misdemeanor charge.

B. <u>Prosecution of Jones</u>

An information charged Jones with Ward's murder (Pen. Code, § 187, subd. (a)) and alleged that he personally used a firearm in the commission of the crime (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).[2]

At Jones's trial, Hughes testified as the primary prosecution witness and was the only percipient witness to the discussions concerning the marijuana robbery and to the shooting. Sabedra testified that she was asleep during the shooting, but she described hiding the gun and testified that Jones told her during their trip to the convenience store that he "blasted that fool because he wouldn't give it up."

Jones's primary defense was that there was no physical evidence linking him to the shooting and that Hughes's status as an accomplice to the murder and Sabedra's status as an accessory after the fact rendered their testimony inherently unreliable.

The jury was instructed on first degree felony murder and told that Jones could be guilty under this theory if a coparticipant committed the fatal act. The jury convicted Jones of first degree felony murder but found not true the allegation that he had personally used a firearm in the commission of the offense (§12022.53, subd. (b)). (The jury did not return verdicts on the personal and intentional discharge allegations under section 12022.53, subdivisions (c) and (d), because the verdict forms instructed the jury to return findings on those allegations only if it found true the personal use allegation.)

---

[2]     All statutory references hereafter are to the Penal Code.

5

Jones was sentenced to prison for 25 years to life, along with a consecutive three-year term for a separate case for which he was on felony probation at the time of the murder. We affirmed the judgment in December 2019.

C. Jones's Petition for Resentencing

In 2018, Senate Bill No. 1437 (SB 1437) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Gentile* (2020) 10 Cal.5th 830, 842.) It accomplished this by, among other things, amending section 189 such that murder liability is not imposed on persons convicted of felony murder unless they were the actual killer, an aider and abettor who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life.

SB 1437 also created section 1170.95, which established a procedure for defendants convicted of murder under the old law to seek resentencing in the trial court if they believe they could not be convicted of that crime given the above amendment to section 189. (Stats. 2018, ch. 1015, § 4.)

In December 2020, Jones filed a petition for resentencing under section 1170.95 (now renumbered as section 1172.6). In March 2021, after an evidentiary hearing under section 1170.95, subdivision (d), the trial court denied Jones's petition.

In its ruling, the court first considered whether Jones could be convicted of felony murder as the actual shooter. The court concluded: "I'm ultimately going to find that it would not be proper for the Court to make this

6

finding [that Jones was the actual shooter] under these particular facts of this case where the jury made a not true finding on the gun enhancement."

The court next considered whether the prosecution had proved beyond a reasonable doubt that Jones was a major participant in the robbery and acted with reckless indifference to human life as set forth in section 190.2, subdivision (d). The court described its findings according to factors discussed in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) and *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*).

As to Jones's participation in criminal activities known to have a grave risk of death, the court stated: "Factor one, what role did the defendant have in planning the criminal enterprise that led to . . . the death in this case. I would note that after arranging for the marijuana purchase, Ms. Hughes, she returned to the apartment where the defendant and others are present. They're talking and planning about getting the weed, planning the robbery. Mr. Toriano Boyd says that he's not going to do it. Dezmon Frazier says initially all right and then changes his mind at some point. But then significantly, it's the defendant who jumps up, according to the transcript, and says he'll do it, grabbed Toriano's guns and appears excited. [¶] What role did the defendant have in supplying or using lethal weapons. Again, it's noted that the defendant was the one who grabbed Toriano Boyd's gun; and when Mr. Boyd tried to take the bullets out of the gun and/or the clip, it's the defendant who says, I'm going to need that too, and then takes the gun and the clip back. The Court feels that's significant evidence inferring the defendant's willingness to kill Mr. Ward in order to accomplish the robbery, the fact that he's going to need ammunition. [¶] What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used or past experience or conduct with the other participants.

Again, it's noted it's the defendant who ultimately takes the gun and makes sure that it's functional and is armed with bullets. [¶] Was the defendant present at the scene of the killing in a position to facilitate or prevent the actual murder. Based on the testimony, it appears clear that the defendant was present at the scene, along with Nick Paraiso at the time of the killing. [¶] Did the defendant's own actions or inactions play a particular role in the death. Again, it was the defendant who brought the gun loaded with bullets to the actual robbery when it would already have been—in my opinion, based on the evidence, it already would have been two against one Mr. Ward. Had the defendant not brought the loaded gun to the robbery a very likely different outcome could have occurred. [¶] What did the defendant do after lethal force was used. After Mr. Ward was shot, Mr. Ward was left to die in his car. The testimony it's noted that Mr. Jones came back to the residence and stated that he—quote, that he told me he's going to have to shoot him over the weed, so I shot him. I don't know who this N word thought he was. And the[n] later that morning he tells Ms. Sabedra, I blasted that fool because he wouldn't give it up, and then it was testified that the defendant laughed at that point. [¶] In my view, those factors in weighing all of that and the testimony the defendant in my view was a major participant in the underlying felony."

The court found that Jones displayed a reckless indifference to human life based on Jones's subjective awareness that his participation in the felony involved a great risk of death, not just a foreseeable risk. "So as to the *Clark* factors, the defendant's knowledge of weapons. Again, it was the defendant who secured the gun making sure it was armed with ammunition and available. [¶] The use and number of weapons, there was only one loaded firearm here used. [¶] Again, the defendant's proximity to the crime and

8

opportunity to stop the killing or aid the victim. The defendant was at the scene. There was no efforts to stop the crime or no evidence of that. In fact, the defendant was bragging about it afterwards. [¶] The duration of the defendant's conduct, that is whether the murder came at the end of a prolonged period of restraint of the victim by the defendant. There was no evidence of this that I saw in the record. [¶] The defendant's awareness his or her confederate was likely to kill. There was no evidence of that, but it's noted under this that the defendant was the one that said, I'm going to need those bullets. [¶] The defendant's efforts to minimize the possibility of violence during the crime. There was no evidence on this topic, specifically what's noted, again, in the statements that are probative is that the defendant made a statement he's going to have to shoot him over the weed— or, he said he's going to have to shoot him over the weed, so I shot him. I don't know who this N word thought he was, so I blasted that fool. I blasted that fool because he wouldn't give it up in a separate statement." Accordingly, the court denied the petition.

This appeal followed.

## II. DISCUSSION

Although we will ultimately remand the matter to the trial court for further consideration, we respond to some of the parties' contentions to assist the parties and the trial court upon remand.

9

A. <u>Issue Preclusion</u>[3]

Jones argues that the jury, by finding not true the allegation that he personally used a firearm in the commission of the crime, determined he was not the shooter. Therefore, he maintains, the trial court was collaterally estopped from relying on evidence that he "possessed the gun and admitted he was the shooter" at the section 1170.95 hearing.[4]

Issue preclusion applies where (1) the issue sought to be precluded from relitigation is identical to the one decided in a former proceeding; (2) the issue was actually litigated and necessarily decided in the former proceeding; (3) the decision in the former proceeding is final and on the merits; and (4) the party against whom preclusion is sought is the same as, or in privity with, the party to the former proceeding. (*Lucido v. Superior Court* (1990) 51

---

[3] Jones uses the term "collateral estoppel doctrine" to frame his argument. Courts have used the terms "collateral estoppel" and "issue preclusion" interchangeably. (See, e.g., *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 505; *Pike v. Hester* (9th Cir. 2018) 891 F.3d 1131, 1138.) In 2018, the California Supreme Court indicated it would "use 'issue preclusion' in place of 'direct or collateral estoppel.' " (*Samara v. Matar* (2018) 5 Cal.5th 322, 326.) We will strive to do the same, although we sometimes refer to collateral estoppel since the lower court, the parties, and the case law frequently do so.

[4] Respondent raises two threshold issues. First, respondent argues that Jones's claim is forfeited because he did not object on the ground of "collateral estoppel" at the hearing. (Citing *People v. Morales* (2003) 112 Cal.App.4th 1176, 1185.) Jones did, however, contend the jury's finding that he did not personally use a firearm precluded the argument that he was the actual shooter. We therefore do not resolve the appeal on the basis of forfeiture. Second, respondent contends the jury's finding on the personal use enhancement does not mean the jury affirmatively found that Jones was not the shooter. Because the trial court did not base its decision on Jones being the shooter, we do not address the issue.

10

Cal.3d 335, 341, fn. omitted.) Because we conclude that the doctrine does not apply here as Jones argues, we decline to decide whether issue preclusion can ever apply in the context of a section 1170.95 proceeding.

Here, the relevant issue decided by the jury was whether Jones personally used a firearm in the commission of the crime. (§ 12022.53, subd. (b).) The court had instructed the jury, pursuant to CALCRIM No. 3146, that "Someone personally uses a firearm if he or she intentionally does any of the following: [¶] 1. Displays the weapon in a menacing manner; [¶] 2. Hits someone with the weapon; [or] [¶] 3. Fires the weapon." The prosecutor had argued that the jury should find the allegation true because Jones "display[ed] the weapon and fire[ed] it" at the victim. By finding the allegation not true, the jury determined that the prosecution had not proven beyond a reasonable doubt that Jones menacingly displayed a gun, hit someone with it, or intentionally fired the gun that killed Ward.[5]

At the resentencing hearing, the trial court did not relitigate (or find contrary to the jury's verdict) that Jones displayed, hit, or fired the gun that

_____

[5]     A jury's finding that an enhancement allegation is untrue does not bar a court from determining whether a defendant is eligible for relief under Proposition 36. (*People v. Piper* (2018) 25 Cal.App.5th 1007, 1015 ["a jury's not-true finding on an arming enhancement does not necessarily preclude a trial court from making an eligibility determination under the Reform Act [Proposition 36] that a defendant was armed" – although the defendant's acquittal on firearm-related *charges* did]; *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1111–1112 [jury's not-true finding on knife use enhancement did not render defendant eligible for resentencing under Proposition 36]. Cf. *Cooper, supra,* 77 Cal.App.5th at pp. 416–417 [acquittal on charge of felon in possession of a firearm was inconsistent with trial court findings under § 1170.95 that defendant possessed and fired a gun].) These cases were not decided under the collateral estoppel doctrine. Here, we are concerned with the jury's not true finding on a firearm *use* enhancement allegation, not an acquittal on a felon-in-possession charge.

11

killed Ward. The court made no mention of Jones displaying the firearm in a menacing manner or hitting anyone with the firearm, and it specifically stated it was *not* basing its decision on the theory that Jones was the actual shooter. In finding Jones to be a major participant, the court did mention that "Mr. Jones came back to the residence and stated that he—quote, that he told me he's going to have to shoot him over the weed, so I shot him. I don't know who this N word thought he was. And the[n] later that morning he tells Ms. Sabedra, I blasted that fool because he wouldn't give it up, and then it was testified that the defendant laughed at that point." The court also noted, in connection with its assessment of reckless indifference to human life and specifically whether Jones made any effort to minimize the possibility of violence, that Jones said he's "going to have to shoot him over the weed . . . so I shot him. I don't know who this N word thought he was, so I blasted that fool. I blasted that fool because he wouldn't give it up." In context, however, the court did not use the statements as evidence Jones fired the gun, but as evidence of Jones's knowledge of events at the scene of the crime (showing his participation), his lack of surprise or remorse, and his callousness toward Ward after he was shot.

It is true that the court at the resentencing hearing relied on the fact that Jones *possessed* and *supplied* the murder weapon, but those issues had not been decided by the jury. Whether Jones merely possessed the gun or handed it at some point to the shooter was not actually litigated or necessarily decided in the jury's determination that the prosecutor failed to prove Jones displayed the gun menacingly, hit someone with it, or fired it at the victim. (See *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 433 [where defendant had not argued against a robbery special circumstance finding for felony murder, the actually-litigated element of collateral estoppel was not

12

met, and the jury's special circumstance finding did not preclude the defendant from seeking resentencing].)[6]

Jones's reliance on *People v. Gordon* (2009) 177 Cal.App.4th 1550 is misplaced. There, issue preclusion barred the trial court from convicting the defendant of being a felon in possession of a firearm, because the jury had acquitted him of the crimes during which he allegedly possessed the firearm on the ground there was a reasonable doubt he was the person with a gun. (*Id*. at p. 1557.) Because the jury did not find he possessed a gun, the court could not find him guilty of possessing the gun. Here, by contrast, Jones was not acquitted of the charged crime, and the jury's finding on the use allegation did not necessitate a finding that Jones had not possessed or supplied the firearm.

B. <u>Substantial Evidence</u>

Jones contends substantial evidence did not support the finding that he was a major participant who acted with reckless indifference to human life. (See *People v. Ramirez* (2021) 71 Cal.App.5th 970, 984–985 [factual findings under § 1170.95, subd. (d) are reviewed for substantial evidence].)

1. <u>Law</u>

"The ultimate question pertaining to being a major participant is whether the defendant's participation in criminal activities known to carry a grave risk of death [citation] was sufficiently significant to be considered major." (*Clark, supra*, 63 Cal.4th at p. 611, citing *Banks, supra*, 61 Cal.4th at p. 803, internal quotation marks omitted.) "Among the relevant factors in determining this question, [the California Supreme Court has] set forth the following: 'What role did the defendant have in planning the criminal

---

[6]      In his reply brief, Jones acknowledges that the trial court could consider whether he *possessed* the firearm.

13

enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inactions play a particular role in the death? What did the defendant do after lethal force was used?' " (*Clark*, at p. 611.)

As to whether the defendant acted with reckless indifference to human life, there is "'significant[] overlap'" with the major participant analysis. (*Clark*, *supra*, 63 Cal.4th at pp. 614–615.) Other factors relevant in determining whether the defendant acted with reckless indifference to human life include: "(1) Knowledge of weapons, and use and number of weapons"; "(2) Physical presence at the crime and opportunities to restrain the crime and/or aid the victim"; "(3) Duration of the felony"; "(4) Defendant's knowledge of cohort's likelihood of killing"; and "(5) Defendant's efforts to minimize the risks of violence during the felony." (*Id*. at pp. 618–623, capitalization and italics omitted.)

Reckless indifference to human life "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.) As to its subjective element, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed" and consciously disregard "the significant risk of death his or her actions create." (*Banks, supra*, 61 Cal.4th at p. 801.) As to its objective element, "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and

14

the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." (*Clark, supra*, 63 Cal.4th at p. 617.) " 'Awareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life; 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement. [Citation.] Notably, 'the fact a participant [or planner of] an armed robbery could anticipate lethal force might be used' is not sufficient to establish reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 677.)[7]

### 2. Evidence

Evidence in the record supported the conclusion that Jones was a major participant in the robbery and acted with reckless indifference to human life. Not only was Jones present for the planning of the robbery, he eagerly volunteered to perpetrate it. He secured the lethal weapon to use in the crime by grabbing the firearm from Byrd before heading off with Paraiso to Ward's truck. Jones knew the dangers posed by the nature of the felony— robbing a drug dealer of drugs—because he insisted on taking the clip of ammunition that he claimed to need. He was present at the scene of the botched robbery and Ward's shooting, because Hughes saw him by Ward's truck before she ducked down and heard a gunshot, and Ward was later found shot in that truck. He provided the murder weapon to the shooter, because he was the one who had Byrd's gun, only he and Paraiso were in position to be the shooter, there was no evidence Paraiso brought his own

---

[7] In addition to the *Banks* and *Clark* factors, a defendant's youthful age must be considered. (*Moore, supra,* 68 Cal.App.5th at pp. 454–455.) We discuss this *post*.

15

gun, and after the shooting it was Byrd's gun that Sabreda was told to hide. Jones's actions played a role in Ward's death. There was no evidence he made any effort to minimize the risk of violence during the robbery. And after lethal force was used and Ward was shot, Jones left him alone to die.

In addition to all that evidence, Jones confirmed his presence at the scene of the shooting, his lack of surprise or concern that Ward was shot, and a callousness toward the victim, by telling Hughes that he "needed to shoot [Ward] *for his weed*" and "*I don't know who he thought he was, so I shot him[,]*" telling Sabedra that he "*blasted that fool* because he wouldn't give it up," and laughing about it. (Italics added.)

Jones's criticisms of this evidence are misplaced. He contends the testimony of Hughes (that Jones grabbed the gun and volunteered to rob Ward) should not count as substantial evidence, because Hughes was not credible in light of her contradictory statements to police and receipt of leniency in exchange for testifying. He argues that the jury, in rejecting the personal use allegation, must have disbelieved Hughes's testimony (or statement to police) that Jones was the shooter.

There is no indication, however, that jurors found the personal use allegation not true because they disbelieved Hughes. As Jones points out elsewhere, Hughes said she had ducked down and *did not see* who did the shooting. The reason the jury did not find true the personal use allegation appears to be a lack of proof or some uncertainty about who the shooter was, not a rejection of her testimony. After all, the jury must have believed Hughes on at least some points, because it convicted Jones of felony murder.

Next, Jones argues that Hughes masterminded the robbery and that uncorroborated accomplice testimony is not sufficient to establish an element of the offense. (*People v. Avila* (2006) 38 Cal.4th 491, 570 [uncorroborated

16

accomplice testimony, standing alone, is insufficient to prove the uncharged target offense underlying a felony murder conviction].)  Jones forgets, however, that we determined in his prior appeal that Hughes's testimony *was* corroborated.  (*Jones, supra,* 2019 Cal.App. Unpub Lexis 8611, *9–12.)

Jones further contends the testimony about Jones possessing Byrd's gun is insufficient because possession of a loaded firearm (as opposed to its use or the possession of many firearms) does not turn participation in a robbery into reckless indifference.  For this proposition, he cites *In re Ramirez (*2019) 32 Cal.App.5th 384, 404 (*Ramirez*).  That case is inapposite, however, because there the firearms were provided before any criminal conduct was contemplated, while here Jones took possession of Byrd's loaded firearm after the robbery was planned and for the express purpose of perpetrating it.  (*Ibid.*)  Jones also cites *Clark, supra*, 63 Cal.4th at p. 618, which stated that the mere fact a robbery involved a gun, "on its own and with nothing more presented," does not suffice to support a finding of reckless indifference to human life.  In *Clark,* however, the defendant had not even carried the gun to the scene of the crime; here, Jones possessed the gun to perpetrate the crime and, in any event, there was more evidence than merely possessing the firearm to suggest Jones's reckless indifference.

Jones also argues that, even though he possessed Byrd's gun, there is no evidence he supplied it to the shooter.  The argument is untenable.  Jones had Byrd's loaded firearm.  There is no cited evidence that Paraiso had his own gun.  Jones and Paraiso walked toward Ward's truck, where Ward was then shot.  Either Jones shot Ward with the gun Jones brought to the scene (which the jury did not find) or Paraiso shot Ward with the gun Jones brought to the scene.  Either way, it was Jones who supplied the gun to the shooter.

Jones additionally argues there was no evidence as to his location at the time of the shooting, and in particular no testimony that Jones and Paraiso were standing next to Ward's truck shortly before the killing. However, there *was* testimony that Hughes saw Jones at the bed of Ward's truck, while Paraiso was in front of the carport on the sidewalk; Hughes heard a muffled argument and then a gunshot. A jury could readily infer that Jones was located at Ward's truck when Ward was shot in his truck.

Jones argues that respondent places undue emphasis on his presence at the scene of the planned robbery and his actions after the shooting, including the fact that Jones left Ward to die. Under a substantial evidence review, however, we do not reweigh the evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

Lastly, Jones's reliance on *In re Bennett* (2018) 26 Cal.App.5th 1002 and *In re Miller* (2017) 14 Cal.App.5th 960, as well as *Ramirez, supra,* 32 Cal.App.5th 384, is misplaced. The defendants in those cases were getaway drivers or participated in the planning of the robbery, but not in perpetrating it. (*Bennett*, at pp. 1019, 1026 [defendant involved in planning the robbery but not at the scene of the murder and did not help facilitate it]; *Miller*, at pp. 965, 971 [defendant played the role of "spotter" selecting the robbery target but was not at the scene of the murder and had no knowledge a gun would be used]; *Ramirez*, at p. 404 [defendant helped plan the robbery and acted as a getaway driver but was not at the scene].) Jones, by contrast, was involved in the planning of the robbery, *and* volunteered to perpetrate it, *and* grabbed the gun, insisting on taking the clip because he would need it, *and* accompanied Paraiso to the scene where Ward was shot and killed.

Taking the *Clark* and *Banks* factors alone, the evidence cited *ante* might well support a conclusion that Jones was a major participant and acted

18

with reckless indifference.  If there were no other circumstances to consider, it might reasonably be inferred that Jones had a willingness to kill, or to assist Paraiso to kill, to accomplish robbing Ward of his marijuana.  (See *Clark, supra*, 63 Cal.4th at p. 617.)  The cited evidence suggested that, subjectively, Jones was willingly involved in the violent manner in which the robbery was perpetrated, consciously disregarded the significant risk of death, and knowingly created a grave risk of death; objectively, the risk of death was such that its disregard constituted a gross deviation from the standard of a law-abiding person.  (See *ibid*; *In re Scoggins, supra,* 9 Cal.5th at p. 677.)

On the record before us, however, we cannot conclude whether there is substantial evidence that Jones was a major participant and acted with reckless indifference to human life based on the *totality* of the circumstances—as we would have to do to uphold the order.  (See *Moore, supra*, 68 Cal.App.5th at pp. 454–455.)  The *Banks* and *Clark* factors are not exclusive.  As discussed next, the totality of the circumstances necessarily includes the defendant's youthful age, which the record does not indicate the court considered.

C. <u>Youthful Age</u>

At the resentencing hearing, defense counsel told the court that Jones "was barely 20 years old at the time of this crime," "immature" and "still developing."  Counsel asked the court to consider Jones's youth, referring the court to *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*) and *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) for the proposition that "recklessness is a hallmark of youth, but it does not alone demonstrate a reckless disregard for the value of human life."

19

In addition, the record of conviction included a report provided by the defense for the sentencing hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 and section 3015. As Jones describes it, the report asserted that he had a traumatic and violent upbringing, had suffered from under-diagnosed mental health issues and drug abuse, witnessed his first murder at age 10, had become numb to violence, was vulnerable to increased aggression, and appeared to be impulsive rather than criminally sophisticated.

In providing a detailed explanation of its denial of the resentencing motion, however, the court did not mention Jones's age or maturity level. Jones says the court "ignored" the evidence, constituting error in light of cases holding that a defendant's age must be considered when determining whether the defendant was a major participant who acted with reckless indifference to human life. (E.g., *People v. Harris* (2021) 60 Cal.App.5th 939, 960 (*Harris*) ["given Harris's youth at the time of the crime [17 years old], particularly in light of subsequent case law's recognition of the science relating to adolescent brain development [citations], it is far from clear that Harris was actually aware 'of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants' "]; *Moore, supra,* 68 Cal.App.5th at pp. 451, 454 [a "defendant's youth is a relevant factor in determining whether the defendant acted with reckless indifference to human life;" sixteen year old defendant was not shown to have acted with reckless indifference, in part due to his youth at the time of the offenses, lack of participation in the robbery, and unawareness of the shooter's propensity for violence]; *People v. Ramirez, supra,* 71 Cal.App.5th at pp. 990–991 [no substantial evidence that 15 year old acted with reckless indifference to life in light of his youth]; accord *In re Harper* (2022) 76

20

Cal.App.5th 450, 467–472 [habeas petition denied where defendant's youth, even if a factor, did not change his culpability because the evidence showed he knew the plan was to kill the victim].)[8]

As respondent points out, we presume the trial court followed the law in exercising its duties and duly considered the evidence presented to it. (*In re Julian R.* (2009) 47 Cal.4th 487, 499; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) In the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court "ignored" that evidence. As Jones points out, however, it is unlikely in this particular instance that the trial court could have known to consider Jones's age and maturity level, particularly to the extent now required by cases issued after Jones's hearing. (See *People v. Chambers* (1982) 136 Cal.App.3d 444, 457 [presumption that the court follows the law does not apply where the sentencing law is not yet established].)

Jones's resentencing petition was filed in December 2020. *Harris* was issued on February 16, 2021. The resentencing hearing took place on March 10, 2021, and the court denied the motion on March 29, 2021, just a few weeks after *Harris*, without any remonstrance by defense counsel. *Moore*— the case holding squarely that a defendant's youth is one relevant factor— was not issued until months later in August 2021. Although defense counsel

---

[8]     We observe that *In re Harper, supra,* 76 Cal.App.5th 450 reads *Moore* to mean that youth is "the *decisive* factor" in determining whether [a] defendant acted with reckless disregard for human life. (*Id.* at p. 468.) We disagree that *Moore* should be read so broadly. *Moore* analyzed the various *Clark* factors and found that many suggested Moore did not act with reckless indifference to human life. (*Moore, supra,* 68 Cal.App.5th at pp. 451–453.) It further specifically stated that "youth is *a* relevant factor" and then concluded that under the totality of the circumstances of the case, including the defendant's youth, a rational trier of fact could not find that Moore acted with reckless indifference to human life. (*Id.* at pp. 454–455. Italics added.)

21

at the resentencing hearing had mentioned Jones's age and characterized him as immature, the court was not specifically directed to the sentencing report or to *Harris*. Although counsel had cited *Miller* and *Graham*, those cases were decided in the context of sentencing juveniles to life without possibility of parole.

We recognize the arguments respondent asserts in its briefing. Jones was already 20 years old at the time of the shooting, while *Harris*, *Moore*, and related cases were premised on scientific findings regarding adolescent brain development, the defendant in *Harris* was 17 years old, and the defendant in *Moore* was just 16. (*Harris*, *supra*, 60 Cal.App.5th at p. 960; *Moore*, *supra*, 68 Cal.App.5th at p. 454.) In *Harris* and *Moore*, the concern was that a juvenile was vulnerable to the influence of others and could fail to appreciate the dangers of his activities and his cohort's actions; Jones, by contrast, volunteered to perpetrate the crime he helped to plan and then grabbed a loaded gun to do it, and he has not yet explained how his exposure to violence and becoming numb to people being shot makes it less likely he acted with reckless indifference to life.

Nonetheless, in the interest of justice, we conclude it is best for the trial court to have a meaningful opportunity to consider Jones's youth as part of the totality of the circumstances germane to determining whether he was a major participant who acted with reckless indifference to human life. We will remand for the court to make this determination on the record consistent with prevailing law. We express no opinion on how the trial court should rule. Because of our remand, we need not and do not decide the remaining issues presented for appeal.

## III. DISPOSITION

The order denying Jones's petition for resentencing is vacated, and the matter is remanded to the trial court for further consideration and decision consistent with this opinion.

                                                   _____
                                                   WISEMAN, J. *


We concur.



_____
JACKSON, P.J.



_____
BURNS, J.



*People v. Jones* / A162634

_____

     *Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

A162634 / People v. Jones

Trial Court: Solano County Superior Court

Trial Judge:        Hon. Timmy P. Kam

Counsel:      Jonathan Soglin and Lauren E. Dodge, By appointment of the First District Court of Appeal under the First District Appellate Project, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Victoria Ratnikova and Christen Somerville, Deputy Attorneys General, for Respondent.